IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JOSHUA FIELDS, | |
| Plaintiff, | |
| v. | Civil Action File |
| | No. _____ |
| THE BOARD OF TRUSTEES OF THE GEORGIA MILITARY COLLEGE, | |
| Defendant. | |

## **COMPLAINT**

Plaintiff Joshua Fields files this action against the Board of Trustees of the Georgia Military College ("GMC") for the wrongful termination of his employment in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* (the "ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*, showing as follows:

**Parties, Jurisdiction, Venue, and Administrative Procedures**

1.

Plaintiff Joshua Fields holds a PhD in biochemistry and was an employee of Defendant GMC from 2013 until his unlawful termination in February 2021. He submits himself to the jurisdiction of this Court for purposes of this action and may be contacted through undersigned counsel.

2.

Georgia Military College is a public state-funded educational institution consisting of a junior college and preparatory school with fourteen campuses throughout the State of Georgia, including its main campus in Milledgeville, Baldwin County. It is not affiliated with either the University System of Georgia or the Technical College System of Georgia, but is instead overseen and operated by Defendant the Board of Trustees of the Georgia Military College. Defendant is subject to personal jurisdiction in this Court and may be served pursuant to Fed. R. Civ. P. 4(j)(2) and O.C.G.A. § 9-11-4(e)(5) by delivering a copy of the summons and complaint on its Chief Executive Officer, President William B. Caldwell, IV, at 201 East Greene Street, Milledgeville, Baldwin County, Georgia 31061.

3.

This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Dr. Fields's claims arise under federal law.

4.

Venue is appropriate in this judicial district and division under 28 U.S.C. § 1391 and Local Rule 3.4 because this is where a substantial part of the events and omissions giving rise to Dr. Fields's claims occurred and where his claims arose.

5.

Dr. Fields filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on March 19, 2021. The EEOC issued Dr. Fields his Notice of Right to Sue on November 22, 2021. This action is timely filed within 90 days after Dr. Fields's receipt of that Notice. All administrative remedies or other prerequisites to suit have been exhausted by Dr. Fields.

**Background Facts Relevant to All Claims**

6.

Dr. Fields was employed by GMC as an assistant professor of biology from 2013 until his termination in February 2021. From September 2017 until October 2018, he also served as Assistant Chief Academic Officer at GMC.

7.

Dr. Fields was an accomplished, successful, and even exemplary educator throughout his tenure at GMC. He was one of GMC's most popular and requested instructors among students. GMC knew that students flocked to Dr. Fields's classes.

8.

Dr. Fields received numerous awards and honors during his tenure at GMC, including, in 2015, the Vulcan Materials Company Teaching Excellence Award, which recognizes exceptional teaching, mentoring, and service to the college

student body and to the successful accomplishment of GMC's mission in higher education. He was also honored as the Faculty Member of the Year at GMC's Augusta campus in 2015.

9.

Dr. Fields met or exceeded all expectations that were communicated to him by GMC and was never made aware of any performance problems.

10.

In March 2020, in response to the COVID-19 pandemic, GMC transferred all of its in-seat classes to online or remote learning, closed its campuses, and sent its faculty and staff to work from home for the rest of the month. In April 2020, GMC extended remote learning through the summer term, announcing that in-person instruction would not be available until at least fall 2020.

11.

From March 2020 until August 2020, Dr. Fields successfully taught his classes remotely from home, without the need for in-person coursework, instruction, or meetings. Neither his job performance nor his students' academic performance suffered as a result of Dr. Fields's remote instruction.

12.

In August 2020, GMC announced that professors would be required to return to in-person, on-campus instruction that month.

13.

Dr. Fields suffers from numerous chronic illnesses and serious medical conditions—including Crohn's Disease, kidney failure, and anemia—that compromise his immune system, substantially limit one or more major life activities, make him susceptible to infection, and place him at higher risk for serious illness or complications if he were to contract COVID-19. Dr. Fields suffered from these conditions throughout the entire tenure of his employment with GMC, and these conditions never interfered with his job performance.

14.

The illnesses and conditions described above constitute "disabilities" for purposes of the ADA and the Rehabilitation Act, as they substantially limit one or more of Dr. Fields's major life activities.

15.

Dr. Fields informed GMC that due to his disabling medical and health conditions, he was at an increased risk for severe illness from and complications associated with the Coronavirus. He further informed GMC that returning to in-person classes was against his doctors' advice. Dr. Fields asked that as a reasonable accommodation, he be permitted to continue remote instruction from August through December 2020, hoping that by January 2021 it would be safe for him to return to the classroom in person.

16.

Dr. Fields's request for an accommodation in the form of a slightly extended remote-learning period was imminently reasonable under the circumstances of this case and would have placed no hardship or undue burden on GMC. In fact, GMC continued to promote to its students the availability of its "Online Campus" for virtual learning. At the same time that GMC was mandating its faculty return to the classroom, it was still allowing students to opt for virtual instruction and was making all of its classes available online. GMC also informed students that instructors would be available to answer questions and provide assistance virtually by e-mail and chat.

17.

Dr. Fields had taught online courses in the past at GMC, even before the pandemic, including for all of 2016. His courses were popular, and he received excellent student and supervisor evaluations for his online teaching. He was more experienced and better equipped than many other faculty to successfully transition his courses to an online platform.

18.

GMC summarily dismissed Dr. Fields's request for reasonable accommodations of his disabilities. It responded in a cursory fashion that it did not intend to grant any accommodations for COVID-19. GMC knew, however, that

Dr. Fields was not requesting an accommodation for COVID-19, but a reasonable accommodation for disabilities that he suffers from which place him at higher risk for serious illness if he were to contract COVID-19.

19.

GMC gave Dr. Fields only two options: return to in-person instruction on campus in August 2020 or take an unpaid leave of absence. Dr. Fields had no choice but to take unpaid leave beginning in August 2020 as a result of GMC's failure to grant reasonable accommodations for his underlying serious medical conditions.

20.

At the same time that GMC refused to consider Dr. Fields's request to teach remotely, it was allowing other faculty to teach courses remotely under circumstances unrelated to a disability: for example, if a course did not have sufficient enrollment to justify an in-person class, GMC would allow the professor to make the class virtual.

21.

At the end of the 2020, the COVID-19 pandemic was still raging and it remained unsafe and against medical advice for Dr. Fields to return to in-person teaching in January 2021. This was in part due to the fact that since the return to

in-person instruction in August 2020, GMC was not rigorously enforcing COVID safety precautions such as social distancing and mask wearing.

22.

Having already taken two quarters of leave,[1] Dr. Fields was eager to return to teaching, and he renewed his request that GMC allow him to teach virtually for the quarter beginning in January 2021, just as he had successfully done from March until August 2020. GMC again denied Dr. Fields's request to teach his classes remotely. It continued, however, to boast about its remote-learning options for students, to make all classes available for online learning, and to require professors to provide virtual assistance to students through e-mail and chat.

23.

It would have been feasible and reasonable, and would have worked no hardship on GMC, for Dr. Fields to continue teaching his classes remotely during the fall of 2020 and the spring of 2021, just as he had done during the spring and summer of 2020.

24.

In-classroom instruction, as opposed to virtual or remote instruction, was not an essential function of Dr. Fields's job as an assistant professor at GMC. Even

---

[1] GMC operates on a quarter (rather than semester) system. Generally, Q1 begins in August, Q2 begins in October, Q3 begins in January, and Q4 begins in March each year.

if in-classroom instruction was ever an essential function of the job, the circumstances of the pandemic and the successful implementation of remote teaching during the spring and summer of 2020 made clear that by the fall of 2021, being physically present in a classroom to teach was no longer an essential function. This was particularly true in light of the fact that students were still being given the option to attend some or all classes virtually. GMC would have suffered no undue hardship by virtue of having Dr. Fields's classes offered only online for a short while longer, even while other classes were being offered in person.

25.

Dr. Fields was terminated on February 1, 2021. This termination was discriminatory and actually and proximately resulted from GMC's failure to grant any reasonable accommodation.

### Count I: Disability Discrimination In Violation of the Rehabilitation Act and Titles I and II of the Americans with Disabilities Act

26.

Plaintiff incorporates all preceding paragraphs by reference as if fully restated herein.

27.

Section 504 of the Rehabilitation Act, Title I of the ADA, and Title II of the ADA all prohibit Defendant GMC from discriminating against Dr. Fields because

of his disability in connection with his employment. This prohibition extends to adverse actions such as terminations as well as the failure to grant reasonable accommodations for Dr. Fields's disabilities.

28.

Defendant GMC is a "program or activity receiving Federal financial assistance" for purposes of Section 504, a "covered entity" for purposes of Title I of the ADA, and a "public entity" for purposes of Title II of the ADA.

29.

At all times relevant to this action, Dr. Fields was a qualified individual with a disability who was able, with or without reasonable accommodations, to perform the essential functions of his job at GMC.

30.

Defendant GMC intentionally discriminated against Dr. Fields because of his disabilities in violation of Titles I and II of the ADA and the Rehabilitation Act by taking an adverse action against him (i.e., terminating his employment) and by failing to reasonably accommodate his disabilities or even engage in any interactive process to determine if a reasonable accommodation was possible (which it was).

31.

The accommodations requested by Dr. Fields were reasonable, appropriate, and necessary to avoid discrimination against Dr. Fields because of his disabilities, and they would have worked no hardship on GMC.

32.

The accommodations requested by Dr. Fields would not have caused GMC to incur any additional costs, were of the same nature as policies that had previously been implemented by GMC for all employees regardless of disability, would not have disrupted or interfered with GMC's ability to provide its students with an outstanding educational experience, and would not have meaningfully altered GMC's operations.

33.

GMC failed to give serious consideration to Dr. Fields's request or engage in an interactive process to determine whether the accommodation requested or any other reasonable accommodation would have been possible. Instead, GMC summarily rejected his request in a cursory fashion, treating his request to continue teaching remotely on a temporary basis because of his disabilities in the same dismissive fashion as a request from a non-disabled person to teach remotely merely because it was their personal preference to do so. In fact, GMC was *more*

receptive to remote teaching requests from non-disabled faculty, such as those whose in-person courses did not achieve sufficient enrollment.

34.

Defendant's actions and omissions in violation of the Rehabilitation Act and the ADA were intentional, knowing, willful, and wanton, and done with discriminatory intent.

35.

Defendant's actions and omissions in violation of the Rehabilitation Act and the ADA have caused Dr. Fields to suffer harm in the form of, among other things, lost wages, lost benefits, lost opportunities for advancement, harm to his reputation and career, mental anguish and emotional distress, attorneys' fees, expenses of litigation, and other monetary and non-monetary harms for which Defendant is liable.

**Demand for Jury Trial**

36.

Plaintiff demands a trial by jury for all issues so triable.

**Prayer for Relief**

37.

Plaintiff respectfully requests that this Court:

A.     Award   Plaintiff   damages   in   an   amount   reasonable   and commensurate with the losses imposed upon him by Defendant's unlawful and discriminatory acts, including his pain and emotional distress;

B.     Award Plaintiff back pay and other lost benefits of employment in an amount to be proven at trial;

C.     Award Plaintiff front pay in an amount justified by the evidence at trial, but estimated at this time to be a minimum of three to five years of front pay, as reinstatement is not feasible under the circumstances;

D.     Award Plaintiff his costs and attorneys' fees;

E.     Award   Plaintiff   pre-   and   post-judgment   interest   at   the   maximum rates allowable;

F.     Grant a trial by jury on all issues so triable; and

G.     Grant   such   other   and   further   relief   as   the   Court   deems   necessary, proper, or just.

Dated and filed this 16th day of February, 2022.

> */s Jennifer K. Coalson*
> Jennifer K. Coalson
> Georgia Bar No. 266989
> jcoalson@pcwlawfirm.com
> Andrew Y. Coffman
> Georgia Bar No. 173115
> acoffman@pcwlawfirm.com
> Parks, Chesin & Walbert, P.C.
> 75 14th St. NE, Suite 2600
> Atlanta, GA 30309

(404) 873 – 8000 (Phone)
(404) 873 – 8050 (Fax)

*Counsel for Plaintiff*